Filed 6/18/26  Shetty v. Daluvoy CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| NIKI-ALEXANDER SHETTY et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> RAO VENKEKATESWARA DALUVOY et al., <br><br> Defendants and Respondents. | B341587 <br><br> (Los Angeles County Super. Ct. No. 22VECV00379) |

APPEAL from an order of the Superior Court of Los Angeles County, Valerie Salkin, Judge.  Affirmed.

Law Office of Richard L. Antognini and Richard L. Antognini for Plaintiffs and Appellants Niki-Alexander Shetty and Adina Zaharescu.

Epps & Coulson, Dawn M. Coulson and Jeffrey A. Cohen for Defendants and Respondents Arvind Doshi, Chandrika Doshi, Tejas Doshi and Paras Doshi.

———————————

## INTRODUCTION

Niki-Alexander Shetty and his wife Adina Zaharescu appeal from the trial court's order denying their motion under the mandatory provision of Code of Civil Procedure section 473, subdivision (b),[1] to vacate their voluntary dismissal of their complaint against Arvind Doshi, Paras Doshi, Tejas Doshi, and Chandrika Doshi (the Doshi parties). Because the mandatory provision of section 473, subdivision (b), does not apply to voluntary dismissals, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Shetty Files Several Actions Against the Doshi Parties and Others*

Shetty and Zaharescu filed this action, which the parties refer to as the lead case, on March 16, 2022. In their 64-page, 208-paragraph second amended complaint Shetty and Zaharescu asserted 19 causes of action against 15 defendants, including Rao Venkekateswara Daluvoy, the Doshi parties, and numerous other individuals, entities, and alleged alter egos. Shetty and Zaharescu alleged Daluvoy, the Doshi parties, and others

---

[1] Statutory references are the Code of Civil Procedure.

2

participated in an elaborate conspiracy to defraud Shetty and Zaharescu of their money and their property.

It all began in 2018, when Shetty and Zaharescu claim Daluvoy, who said he was a vascular surgeon, stated that he needed a loan "to close an escrow to purchase . . . land to grow medical marijuana," that "he was in Spain and could not appear in person at Shetty's office," and that "he would return the funds back to Shetty as soon as he had returned from Spain within a month." Shetty and Zaharescu alleged Daluvoy convinced Shetty to send $25,000 to the "purported seller" of the land, who was actually "a money launderer transferring monies from the United States to foreign countries through unlawful havala [*sic*] cash transactions, an act forbidden under American laws."[2] Despite

---

[2] "Hawala" is "an 'ancient South Asian money exchange system' which 'consists of an international network of non-bank financial agents, often built on trusted family or cultural relationships.'" (*United States v. Freeman* (1st Cir. 2025) 147 F.4th 1, 18, fn. 19.) "The hawala system is widely used in Middle Eastern and South Asian countries, and is primarily used to make international funds transfers. Though there are many forms of hawala, in the paradigmatic hawala system, funds are transferred from one country to another through a network of hawala brokers (i.e., 'hawaladars'), with one hawaladar located in the transferor's country and one in the transferee's country. In this form, a hawala works as follows: If Person A in Country A wants to send $1,000 to Person B in Country B, Person A contacts Hawaladar A in Country A and pays him $1,000. Hawaladar A then contacts Hawaladar B in Country B and asks Hawaladar B to pay $1,000 in Country B currency, minus any fees, to Person B. The effect of this transaction is that Person A has remitted $1,000 (minus any fees) to Person B, although no money has actually crossed the border between Country A and Country B. [¶] Eventually, Hawaladar B may need to send

3

apparently losing this money when Daluvoy (from Spain) used it to arrange for a loan to purchase a car dealership in Carson, Shetty decided to go into business with Daluvoy by investing with him in developing raw land, acquiring the car dealership, and helping resolve Daluvoy's "personal debt situation."  Their business relationship was "memorialized" in an operating agreement for an entity called Ryan Estates, LLC, which Shetty and Daluvoy formed to acquire, develop, and sell real estate.  By February 2019 Shetty had invested in, or committed millions of dollars to, Ryan Estates.  Shetty and Zaharescu alleged: "Unknown to Shetty at that time, was that Daluvoy had a *modus operandi* by which he engaged in a pattern and practice of borrowing monies from various individuals to the tune of millions of dollars using his *alter-ego* entities since 2006 who have been similarly duped and deprived of monies and properties and have

money to Country A on behalf of a customer in Country B; he will then contact Hawaladar A, with whom he now has a credit due to the previous transaction.  Hawaladar A will remit the money in Country A to the designated person there, thus clearing the debt between the two hawaladars.  Typically, Hawaladar A and Hawaladar B would engage in many parallel transactions moving in both directions.  A number of transactions might be required before the books are balanced between the two hawaladars.  If after some period of time their ledgers remain imbalanced, the hawaladars may 'settle' via wire transfer or another, more formal method of money transmission.  The hawala system operates in large part on trust, since, as in the example above, a hawaladar will remit money well before he receives full payment, and he does so without the benefit of a more formal legal structure to protect his investment." (*United States. v. Banki* (2d Cir. 2011) 685 F.3d 99, 103, fn. omitted.)

4

been named as creditors *for precautionary purposes* in the various Bankruptcy proceedings . . . ."

Shetty and Zaharescu alleged Arvind Doshi joined the conspiracy in September 2018. According to them, "Arvind Doshi is a loan shark engaged in the business of loan to own and operates his lending enterprise using his family members namely Paras Doshi, Chandrika Doshi, a fictitious business name Doshi Investment, and a trust entity . . . to conduct his hard money and usurious business . . . ." Shetty and Zaharescu alleged Daluvoy convinced Shetty "to accept short term loans from Doshi against Shetty and his family-owned properties with tremendous equity located in San Diego, Riverside, Los Angeles and Ventura counties from which the Shetty family derived rental income." Shetty agreed to borrow money, secured by his properties, to invest in the property owned by Ryan Estates and in the car dealership business. Daluvoy and Doshi, however, transferred properties owned by Ryan Estates to entities they created. Shetty and Zaharescu alleged: "While on one hand [the Doshi parties] sought to foreclose [on] Shetty's properties as the balloon payment on the loans against [those] properties were becoming due, the loan to own-Doshi parties made a secret deal with Daluvoy to participate in the land transactions in furtherance of their conspiracy." Shetty claimed he did not uncover the "deep-rooted conspiracy by and between" Doshi and Daluvoy until he reviewed documents filed in Daluvoy's involuntary bankruptcy case.

Shetty and Zaharescu alleged causes of action against Daluvoy for, among other things, breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and fraud. They alleged causes of action against

5

the Doshi parties for, among other things, conspiracy to commit fraud, breach of oral contract, cancellation of instruments, quiet title, and wrongful foreclosure.

Meanwhile, on April 7, 2022 Shetty filed a separate action against the Doshi parties and Ryan Estates in San Diego County Superior Court, which the parties refer to as the San Diego case, making some of the same claims.[3] In that action Shetty alleged that in 2019 the Doshi parties lent Daluvoy and Shetty money for Ryan Estates and the car dealership investment and that he and Daluvoy executed a promissory note payable to the Doshi parties and secured by three properties owned by Shetty. Shetty alleged that, after Daluvoy took the assets from Ryan Estates (which the Doshi parties apparently controlled), Shetty offered to return the loan from the Doshi parties, but that Arvind Doshi refused and initiated foreclosure proceedings. Shetty alleged: "In or around early July of 2020, [the Doshi parties] represented to and promised [Shetty] that if [he] would transfer a 20% ownership interest in each of the three properties to [the Doshi parties] Doshi would not foreclose on any of the three properties and would look solely to Daluvoy for repayment of the note. Around the same time, Daluvoy represented to and promised [Shetty] that he would satisfy the note in consideration for the transfer of 20% interests to" Doshi and Ryan Estates. In reliance on these "misrepresentations and false promises" by Daluvoy and Doshi, Shetty transferred a 20 percent ownership interest in the properties to Doshi and Ryan Estates. Shetty asserted causes of action in the San Diego case for cancellation and quiet title.

---

[3]     One of the properties at issue in this litigation is in San Diego County.

6

B.   *The Trial Court Consolidates the Lead Case and the San Diego Case in Los Angeles County Superior Court*

On January 18, 2023 the Doshi parties filed a motion in Los Angeles County Superior Court to coordinate and consolidate the lead case and the San Diego case. They argued, among other things, the two cases "all contain claims against the same defendants, which include substantially overlapping facts and legal theories involving damages, cancellation of written instruments, and quiet title." According to counsel for the Doshi parties, Shetty and his attorney declined to stipulate to have the court consolidate the two cases because the court in Los Angeles County sustained the defendants' demurrers, while the court in San Diego County "overruled similar demurrers." Shetty, however, did not oppose the motion to consolidate.

On February 28, 2023 the trial court granted the motion to consolidate the two cases. The court found "that common issues of fact and law predominate both the Lead and [San Diego] cases, as in both actions there is the same alleged agreement between Shetty and the Doshi [parties] regarding his transfer of interest in the Subject Properties. [¶] In the [San Diego] Case, Shetty is pursuing claims for cancellation of instrument and quiet title regarding the Subject Properties, and the very same claims are the subject of Shetty's eighteenth (18th) through twenty-fourth (24th) causes of action in the Lead Case. [¶] The Court further finds that the legal theories underlying Shetty's claims in either case are identical, i.e., Shetty alleges that the Doshi [parties] obtained an interest in the Subject Properties by way of false promises, which is [the] basis of his claims for cancellation of instruments and quiet title." The court ordered the Doshi parties "to take all necessary procedural steps to arrange for the

7

complete transfer of the San Diego case" to Los Angeles County Superior Court.

### C. *Shetty Voluntarily Dismisses the Complaint in the San Diego Action*

The litigation proceeded in Los Angeles County Superior Court. The Doshi parties filed demurrers, motions to strike, discovery motions, and motions for sanctions, and the trial court issued orders to show cause. At a case management conference on November 17, 2023 Shetty made an oral request to dismiss the Doshi parties and Ryan Estates from the San Diego action.[4] That same day, the trial court signed and entered a written order dismissing, on Shetty's motion, the San Diego case without prejudice against the Doshi parties.

Several months later, in February 2024, the trial court (in the lead case) sustained demurrers and motions to strike by the Doshi parties, rulings that eliminated all causes of action against them. On February 13, 2024 the court, finding there were "no other causes of action or claims asserted by [Shetty and Zaharescu] against the Doshi Defendants in this action," signed and entered a written order dismissing Shetty and Zaharescu's

---

[4] The court's minute order states: "The Court, pursuant to an oral request made by Plaintiff, Niki-Alexander Shetty, orders Paras A Doshi, Arvind J Doshi, RYAN ESTATES, LLC, A California Limited Liability Company and Tejas A Doshi in Complaint filed by Niki-Alexander Shetty on 06/02/2023 dismissed without prejudice." As stated, Shetty filed the San Diego case in San Diego County Superior Court on April 7, 2022. June 2, 2023 is the date that, after the trial court consolidated the two actions, the complaint in the San Diego case was filed in Los Angeles County Superior Court.

8

complaint in the lead case against the Doshi parties with prejudice.

D. *The Trial Court Denies Shetty's Motion Under the Mandatory Provision of Section 473, Subdivision (b) To Vacate the Dismissal of the San Diego Case*

On May 17, 2024, six months to the day after Shetty voluntarily dismissed his complaint in the San Diego case against the Doshi parties, he filed a motion under the mandatory provision of section 473, subdivision (b), to vacate the dismissal. Counsel for Shetty argued his client was entitled to relief because he "was mistaken" in believing the lead case and the San Diego case "were largely redundant, when in fact they are not," and "he did not have his clients' consent to dismiss the action." Counsel argued that "relief from dismissal is mandatory where [the] attorney admits his error" and that, "[w]hether excusable or not, that is sufficient to trigger the mandatory provision of [section 473, subdivision (b),] to obtain relief from the dismissal without prejudice . . . ."

The Doshi parties opposed the motion to vacate, arguing among other things that, because the court had consolidated the San Diego case "into the lead case," there was "no longer a separately pending action in any event. Because [Shetty and Zaharescu] had already filed their Second Amended Complaint in this Lead-Main Action, the continued maintenance of the related action was redundant and superfluous." The Doshi parties also argued that the court had already dismissed the Doshi parties from the lead case and that reinstating the San Diego case "would ultimately result in yet another dismissal" on the same grounds. . . . In other words, the maintenance of the related case

9

is now moot (regardless of any attorney mistake or neglect) as a result of the judgment of dismissal of [Shetty's] claims against the Doshi Parties."

The trial court denied the motion to vacate the dismissal. The court stated that, though counsel for Shetty stated his mistake was that the lead case and the San Diego case "did not involve common issues of fact and law," the court had "already determined that in fact they arise from the same transactions, which is why they were consolidated to begin with."  The court concluded that counsel for Shetty "cannot be 'mistaken' as to matters which the Court already adjudicated and which his clients failed to timely oppose" and that, because the court "already determined that the [San Diego case] arises out of the same facts and legal theories included in the [lead case], the Court's dismissal" of Shetty and Zaharescu's complaint in the lead case barred Shetty's complaint in the San Diego case. Shetty timely appealed from the order denying his motion to vacate the dismissal.

## DISCUSSION

A.    *Applicable Law and Standard of Review*
"'Section 473, subdivision (b), contains two distinct provisions for relief:  one is discretionary and is reserved for situations of excusable neglect, while the other is mandatory and applies even to inexcusable neglect of an attorney resulting in his or her client's default provided that the attorney submits an adequate affidavit of fault.'"  (*Rodriguez v. WNT, Inc.* (2025) 116 Cal.App.5th 791, 802.)  "Mandatory relief is available

10

'whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, . . . unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect.'" (*Talbott v. Ghadimi* (2025) 109 Cal.App.5th 967, 976-977; see *The Urban Wildlands Group, Inc. v. City of Los Angeles* (2017) 10 Cal.App.5th 993, 996; *Las Vegas Land & Development Co., LLC v. Wilkie Way, LLC* (2013) 219 Cal.App.4th 1086, 1090.)

"'[T]o the extent that the applicability of the mandatory relief provision does not turn on disputed facts, but rather, presents a pure question of law, it is subject to de novo review. [Citation.] Where the facts are in dispute as to whether or not the prerequisites of the mandatory relief provision of section 473, subdivision (b), have been met, we review the record to determine whether substantial evidence supports the trial court's findings.'" (*Talbott v. Ghadimi*, *supra*, 109 Cal.App.5th at p. 977.)

> B. *The Trial Court Did Not Err in Denying Shetty's Motion To Vacate the Dismissal Under the Mandatory Provision of Section 473, Subdivision (b)*

Shetty sought to set aside his voluntary dismissal of the San Diego case under the mandatory provision of section 473, subdivision (b). As the Doshi parties correctly argue, however, that provision does not apply to voluntary dismissals. (See *Jackson v. Kaiser Foundation Hospitals, Inc.* (2019) 32 Cal.App.5th 166, 176 [because "the mandatory relief provision reaches only those dismissals that are 'procedurally equivalent to a default' [citation], . . . mandatory relief is unavailable to undo

11

[the plaintiff's] voluntary dismissal of her action, even assuming the dismissal was due to her attorney's erroneous advice"]; *Nacimiento Regional Water Management Advisory Com. v. Monterey County Water Resources Agency* (2004) 122 Cal.App.4th 961, 967 ["the mandatory provision [of section 473(b)] is inapplicable to voluntary dismissals" (brackets in original)]; *Gotschall v. Daley* (2002) 96 Cal.App.4th 479, 483 [same]; *English v. IKON Business Solutions, Inc.* (2001) 94 Cal.App.4th 130, 146 [the mandatory provision of section 473, subdivision (b), "was not intended to apply to voluntary dismissals"]; *Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 620 [the mandatory relief provision of section 473, subdivision (b), is inapplicable to "voluntary dismissals entered pursuant to settlement"].)

Shetty "acknowledge[s] that multiple courts of appeal have ruled on the question of voluntary dismissal, and most cases agree with" the Doshi parties that the mandatory provision of section 473, subdivision (b), does not apply to such dismissals. Shetty argues, however, that the Supreme Court in *Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249 (*Zamora*) "held that voluntary dismissals can fall within the discretionary" provision of section 473, subdivision (b), and that the Supreme Court's holding in *Zamora* "should apply equally to the mandatory relief provision.  There is no valid basis to allow relief for voluntary dismissals under one sentence and not under the other."

The Supreme Court in *Zamora*, however, made clear its decision did not apply to the mandatory provision of section 473, subdivision (b).  In *Zamora* the Supreme Court held a party who makes an erroneous offer under section 998 "may obtain relief

12

pursuant to the discretionary relief provision of section 473, subdivision (b)."[5] (*Zamora*, *supra*, 28 Cal.4th at p. 252.)  The Supreme Court rejected the defendant's contention the phrase "taken against" in the discretionary provision of section 473, subdivision (b),[6] "limits the discretionary relief provision in *involuntary* judgments or dismissal." (*Zamora*, at p. 256.)  The Supreme Court, however, repeatedly stated its holding applied to the discretionary provision, not the mandatory provision, of section 473, subdivision (b). (See, e.g., *Zamora*, at p. 254 ["courts have consistently applied the discretionary relief provision of section 473 to voluntary judgments or dismissals"]; *id.* at p. 255 ["courts have consistently held that parties may obtain relief from judgments, dismissals, or stipulations voluntarily entered into pursuant to a voluntary agreement through the discretionary relief provision of section 473"].)  Indeed, the Supreme court stated that analysis of "the mandatory relief provision of section 473, subdivision (b)," has "no bearing on our interpretation of the discretionary relief provision." (*Id.* at p. 256.)

---

[5]     The error in *Zamora* was by counsel for the plaintiff's legal assistant, who prepared an offer under section 998 that mistakenly offered to have judgment taken against the plaintiff and for the defendant, rather than for the plaintiff and against the defendant.  (*Zamora*, *supra*, 28 Cal.4th at p. 252.)

[6]     "The court may, upon any terms as may be just, relieve a party or the party's legal representative from a judgment, dismissal, order, or other proceeding taken against the party through the party's mistake, inadvertence, surprise, or excusable neglect."  (§ 473, subd. (b), 1st sentence.)

## DISPOSITION

The order is affirmed.  The Doshi parties are to recover their costs on appeal.

SEGAL, J.

We concur:

MARTINEZ, P. J.

FEUER, J.

14